UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GANG "STEVEN" CHEN,

    Petitioner,

    v.

TIMOTHY AITKEN, et al.,

    Respondents.

_____/

No. C 12-6024 PJH

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

    Before the court is petitioner Gang "Steven" Chen's ("petitioner" or "Chen") petition for writ of habeas corpus, along with his motion for a temporary restraining order and motion for preliminary injunction. Although the court indicated at the hearing that it was inclined to deny the petition, having read the parties' papers and carefully considered the arguments and the relevant legal authority, and upon further reflection and good cause appearing, the court hereby GRANTS the habeas petition as follows.

## BACKGROUND

    Petitioner Gang "Steven" Chen is a citizen of China who has been a lawful permanent resident ("LPR") of the United States since 2001. In 2008, the US filed a criminal complaint against Chen. Initially, the government charged Chen with making false statements in his immigration papers and conspiring to obtain citizenship through fraudulent means, with a potential sentence of up to ten years. But in 2009, the government filed a superseding information, charging Chen with only a single count of making false statements in relation to naturalization, with a potential sentence of up to five years. Chen pled guilty to this reduced charge, and was sentenced to five years of probation. In pleading guilty, Chen admitted that the corporate sponsor for his H1-B visa was a sham entity, that the visa application itself was based on a forged signature, that his

naturalization application concealed the fact that he was married to two women at the same time, and that these statements were "false, material, and intended to deceive."

After conviction and sentencing, Chen sought and obtained judicial approval to travel to China. When he returned, on July 17, 2010, immigration officials determined that he was inadmissible due to his prior conviction, and because his conviction is for a crime involving moral turpitude, the Department of Homeland Security ("DHS") placed him into removal proceedings. Chen is contesting the grounds of removal, and even if he is found removable, Chen has requested relief from removal in the form of waivers of deportation and inadmissibility.

Even after he was put into removal proceedings, Chen was allowed to enter the United States, albeit on "parole." During this time, he was allowed to leave the country, so long as he obtained permission from either a federal judge or a probation officer. Between July 2010 and May 2012, Chen was granted permission to travel abroad four times. However, when returning from his fourth trip (in May 2012), Chen was detained at San Francisco International Airport, and taken into custody by DHS. Chen has remained in custody since May 19, 2012.

Chen's removal proceedings are still ongoing. On October 9, 2012, the immigration judge stated that it was "the court's intention to enter an order of removal to China." An additional hearing was previously scheduled, but the parties informed the court that the immigration judge intended to rule without any further hearings. In fact, on January 7, 2013, the immigration judge did indeed order petitioner Chen's removal to China.[1]

Shortly after the immigration judge issued his preliminary findings on October 9, Chen filed a written request to DHS requesting his release on parole while removal

---

[1] The court received notice of the immigration judge's removal order today, after this order was written, but before it was issued. However, as petitioner's counsel pointed out at the January 2 hearing, the removal order is not yet final, as it can be appealed to the Board of Immigration Appeals, and then to the Ninth Circuit. Throughout this appeals process, petitioner is still subject to the same detention provision that he has been for the past seven months. Thus, while the court has considered this recently-issued removal order, it does not find sufficient reason to change its decision.

2

proceedings were ongoing. On December 3, 2012, the request was denied, based on the conclusion that Chen was a "significant flight risk" due to his prior criminal history and the immigration judge's preliminary findings sustaining the charge of removability. DHS rejected the argument that Chen's detention was "unduly prolonged," and instead found that Chen's removal was "reasonably foreseeable."

On November 27, 2012, Chen filed a petition for writ of habeas corpus, along with a request for a temporary restraining order and a motion for preliminary injunction, all seeking the same relief - an individualized bond hearing to challenge his continued detention during the duration of his removal proceedings. Chen named as respondents the following individuals: Timothy Aitken (ICE field director), James Grottkau (captain of the West County Detention Facility, where petitioner is being held), Janet Napolitano (Secretary of DHS), John Morton (ICE Director), Juan P. Osuna (Director of the Executive Office for Immigration Review), and Eric Holder (US Attorney General) (together, "respondents"). Petitioner asserts two causes of action: (1) violation of the Immigration and Nationality Act; and (2) violation of due process under the Fifth Amendment.

## DISCUSSION

Chen is being detained pursuant to 8 U.S.C. § 1225(b), which applies to "arriving aliens" who are "seeking admission." Notably, section 1225(b) applies to all non-citizens arriving in the United States, even those with LPR status, such as petitioner. Petitioner does not challenge his classification as an "arriving alien" under section 1225(b). Nor does petitioner appear to dispute that, as a non-citizen convicted of a crime involving moral turpitude (i.e. making false statements relating to naturalization), he was initially subject to mandatory detention under section 1225(b) and its related regulations. Under those regulations, an immigration judge does not have jurisdiction to conduct a bond hearing, and any possibility of parole lies within the sole discretion of DHS officials. While petitioner does not challenge the government's initial decision to detain him, he argues that the detention, which has lasted over seven months, has now become prolonged, implicating due process concerns. Petitioner points to a number of recent Ninth Circuit cases as

"definitively" establishing that detention becomes "prolonged" after six months, and that such prolonged detention "raises serious constitutional concerns," such that the government must be required to justify the burden of continued detention at an individualized bond hearing.  See, e.g., Diouf v. Napolitano, 634 F.3d 1081, 1091 (9th Cir. 2011) (holding that aliens facing prolonged detention under section 1231(a)(6) are entitled to a bond hearing).

      Respondents dispute the applicability of the cases cited by petitioner, pointing out that nearly all of the cases involve "admitted" aliens, who are entitled to more constitutional protection than "arriving" aliens such as Chen.  Respondents emphasize the importance of this distinction between "admitted" and "arriving" aliens, arguing that an alien's classification is the key determinant of "whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).  In respondents' view, petitioner's only avenue for challenging his detention was by requesting parole from DHS.  As explained above, petitioner made such a request, and the request was denied.  Respondents further argue that the cases cited by petitioner all involved individuals who were detained for much longer than six months - at least two years in every case where a bond hearing was ordered, and up to six or seven years in some cases.  See, e.g., Tijani v. Willis, 430 F.3d 1241 (9th Cir. 2005) (detainee held for two years and eight months); Casas-Castrillon v. DHS, 535 F.3d 942 (9th Cir. 2008) (detainee held for nearly seven years).  Respondents point to the Supreme Court's decision in Demore v. Kim as expressly authorizing detentions that last beyond six months.  538 U.S. 510, 531 (2003) (upholding detention of an alien under section 1226(c)).  The Demore Court noted that detention "lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal," and even though the specific detention at issue was "somewhat longer than average" at six months, it was still "constitutionally permissible."  Id. at 530-31.

      The court does find that petitioner was properly classified as an "arriving alien" under

section 1226(b), and was thus properly subject to mandatory detention. The court further finds that none of the cases cited by petitioner establishes a bright-line rule entitling detainees to a bond hearing after six months of detention. In fact, <u>Demore</u> specifically held that detention of over six months did not automatically raise any constitutional problems. However, the court does find that, in this specific case, petitioner Chen is entitled to an individualized bond hearing before an immigration judge. The court limits its holding to this specific set of facts, and makes no findings regarding the rights of other alien detainees (under section 1226(b) or any other immigration statute). Specifically, the court finds that the detention of petitioner Chen - a legal permanent resident, who had been detained for over six months without receiving a removal order, and who intends to appeal the now-issued removal order to the Board of Immigration Appeals, which would further extend his detention - does raise a due process concern sufficient to make an individualized bond hearing appropriate. Importantly, the court does not find that all "arriving aliens" are entitled to a bond hearing after six months of detention, nor does the court make any determination regarding whether Chen should be entitled to release after a bond hearing. The court finds only that, when a legal permanent resident has been detained under section 1225(b) for over six months, and removal or release is not imminent or even reasonably foreseeable (due to the ongoing nature of his removal proceedings, which are subject to appeal), it is appropriate to require the government to shoulder the "reasonable" burden of providing a bond hearing before an immigration judge. See, e.g., <u>Diouf</u>, 634 F.3d at 1091-92 ("When detention crosses the six-month threshold and release or removal is not imminent, the private interests at stake are profound," and "[t]he burden imposed on the government by requiring hearings before an immigration judge at this stage of the proceedings is therefore a reasonable one.").

    In reaching this conclusion, the court first notes that courts have consistently found that aliens with legal permanent resident status are entitled to greater due process protections than are other aliens. The Supreme Court "has long held that an alien seeking initial admission to the United States requests a privilege and has no constitutional rights

5

regarding his application . . . however, once an alien gains admission to our country and begins to develop the ties that go with permanent residence his constitutional status changes accordingly." Landon v. Plasencia, 459 U.S. 21, 32 (1982).  Notwithstanding Landon, the court recognizes that petitioner Chen had left the United States and was seeking re-entry, and was therefore properly classified as an "arriving alien" under section 1226(b).  Thus, he is not entitled to the same rights as if he had been a legal permanent resident with continuous residence in the United States.  However, both the Supreme Court and the Ninth Circuit have made clear that, all else being equal, a legal permanent resident is entitled to greater due process protections than a newly-arrived alien seeking first-time entry.  See Landon at 32; see also Demore at 544-47 (Souter, J., concurring in part and dissenting in part) (collecting cases and concluding that "even when the Government seeks removal, we have accorded LPRs greater protections than other aliens under the Due Process Clause."); Casas-Castrillon v. DHS, 535 F.3d at 949 ("We hold that the government may not detain a legal permanent resident such as Casas for a prolonged period without providing him a neutral forum in which to contest the necessity of his continued detention.").  Casas not only reaffirmed the principle that legal permanent residents are entitled to heightened due process protections (as compared with first-time entrants), but also established that "prolonged detention without adequate procedural protections would raise serious constitutional concerns."  535 F.3d at 950.

     The question then turns to whether petitioner Chen's detention has been sufficiently "prolonged" to raise the constitutional concerns articulated in Casas.  As respondents point out, the Casas detainee had been held for nearly seven years, far longer than the seven-month detention of petitioner Chen in this case.  However, other Ninth Circuit cases shed some light on exactly when detention becomes "prolonged."  First, in Nadarajah v. Gonzales, the Ninth Circuit reviewed Supreme Court cases and found that the Court had "used the six-month period as the touchstone of reasonableness."  443 F.3d 1069, 1080 (9th Cir. 2006).  While, again, respondents correctly argue that Nadarajah is not directly applicable to the present case, because the Nadarajah detainee had been held for nearly

6

five years and had already prevailed on his asylum claim, it is worth noting that the Nadarajah court ordered the release of an "arriving alien," such as petitioner here, held under the mandatory detention provisions of section 1225(b).

The Ninth Circuit again used the six-month mark as the measure for a "prolonged" detention in Diouf v. Napolitano. 634 F.3d at 1091-92. The Diouf court specifically held that, after six months, "the alien's continuing detention becomes prolonged," and because "the private interest that will be affected by the official action . . . is more substantial; greater procedural safeguards are therefore required." Id. at 1091. The court described "a hearing before a neutral decisionmaker" as exactly the type of "reasonable" procedural safeguard that should be used "[w]hen detention crosses the six-month threshold and release or removal is not imminent." Id. at 1091-92. Importantly, Diouf relied on Casas in reaching this conclusion, even though Casas involved an alien detained under section 1226(a), while Diouf involved an alien detained under section 1231(a)(6). The Diouf court acknowledged that "[t]he government may be correct that at the margin, § 1231(a)(6) detainees have a lesser liberty interest in freedom from detention," but found that "the government makes too much of this distinction," because "the same important interest is at stake - freedom from prolonged detention." 634 F.3d at 1086-87. Notably, unlike Nadarajah, the Diouf court did not order the detainee's release. Instead, Diouf merely ordered a bond hearing, and made clear that, at the hearing, the immigration judge may still find that continued detention is justified. But no matter the result of the hearing, the constitutional concerns raised by prolonged detention required that the detainee at least have the opportunity to contest his continued detention in front of a neutral decisionmaker.

Despite these cases, respondents point back to Demore v. Kim as clear authority that a six month detention does not necessarily raise the constitutional concerns articulated in Casas, Nadarajah, and Diouf. As explained above, Demore directly held that an alien can be detained for over six months without triggering the need for a bond hearing or any other procedural protections. However, Demore placed great emphasis on the short duration of most removal proceedings. The Court based its conclusion, at least in part, on

7

the fact that "the detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal." Demore, 538 U.S. at 530. References to the short duration of typical removal proceedings are scattered throughout the Court's opinion. See, e.g., id. at 513 (Aliens may be "detained for the brief period necessary for their removal proceedings"); id. at 529 (noting that removal proceedings are completed in an average time of 47 days and a median time of 30 days in 85% of cases, and that even in the 15% of cases that involve an appeal, those proceedings are completed in an average of four months, with a median time that is slightly shorter); id. at 531 (upholding the detention "for the limited period of his removal proceedings").

In the present case, petitioner Chen has already been detained for over seven months, and because Chen has already expressed the intention to appeal the just-issued order of removal, the detention is reasonably likely to continue for much longer than the detention in Demore. The Demore Court also emphasized that at least some of the delay in that case was wholly attributable to the detainee himself, who had "requested a continuance of his removal hearing." Id. at 531. In contrast, the delay in this case appears to be attributable to both parties. See Dkt. 19-1, Ex. 1 at ¶ 7 (noting that, at petitioner's most recent hearing, on November 30, 2012, "the parties were unable to finish presenting evidence . . . so the case has not yet been submitted to the immigration judge.").

Based on all of these reasons, the court finds that Demore does not directly govern the facts of this case, and does not abrogate the holdings of Nadarajah, Casas, and Diouf - all of which were decided after Demore. In fact, each of those cases specifically cites to Demore, and emphasizes the Court's reliance on the "brief" and "limited" duration of most removal proceedings. Because petitioner Chen's detention has lasted well beyond the typical period described in Demore, and has become "prolonged" because neither release nor removal are imminent, it implicates the "same important interest" as was at stake in Casas and Diouf - "freedom from prolonged detention." In fact, Diouf held that "an alien facing prolonged detention" is entitled to a bond hearing in front of an immigration judge -

which means that even if the court were to accept respondents' argument that Chen's detention has not yet become prolonged, the length of the remaining appeals process makes clear that Chen faces prolonged detention. See Diouf, 634 F.3d at 1092 (emphasis added). Thus, the court hereby GRANTS Chen's petition for writ of habeas corpus, and orders the government to provide an individualized bond hearing before an immigration judge. The parties agree that a ruling on the merits of the petition disposes of the alternative motions for injunctive relief, as all seek the same thing - an individualized bond hearing. Because Chen's petition is granted, his motion for a temporary restraining order and motion for a preliminary injunction are DENIED as moot.

Finally, the court notes that, on January 4, 2013, petitioner filed a "supplemental brief" in response to the court's questions at the January 2, 2013 hearing. Petitioner did not have court approval to file this brief, and it is thus STRICKEN from the record without consideration of the arguments contained therein. Petitioner's subsequent attempt to introduce this supplemental brief through an administrative motion for leave is DENIED as moot.

This order adjudicates all pending motions in this case and the Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: January 8, 2013

_____
PHYLLIS J. HAMILTON
United States District Judge